# BEE MACHINE CO. v. FREEMAN et al.
## No. 1020.

District Court, S. D. Ohio, W. D.
Aug. 14, 1939.

Cedric W. Porter (of Dike, Calver & Gray), of Boston, Mass., and Raymond Kunkel (of Kunkel & Kunkel), of Cincinnati, Ohio, for plaintiff.

Marston Allen (of Allen & Allen), of Cincinnati, Ohio, for defendants.

NEVIN, District Judge.

This is a suit in equity in which plaintiff, Bee Machine Company, a Massachusetts corporation, seeks to enjoin defendants herein, Benjamin W. Freeman and the Louis G. Freeman Company, an Ohio corporation, both of Cincinnati, Ohio, from canceling a certain patent license agreement entered into between the parties, dated November 29, 1933.

Plaintiff filed its bill of complaint in this court on June 3, 1937. Based upon the allegations of its bill and for the reasons therein set forth it prays that the defendants be "enjoined until further order of this Court from terminating or doing any act toward the termination of the License aforesaid, and from publishing to the trade or taking any other steps likely to arouse the belief or apprehension that the plaintiff is not duly licensed."

On June 18, 1937, answers were filed on behalf of the Louis G. Freeman Company and Benjamin W. Freeman, individually, respectively. In its answer the Louis G. Freeman Company alleges that it has no knowledge of, or interest in, the facts set forth in the bill of complaint; that it is merely a "licensee entitled to manufacture machines within certain territories under the patents referred to in the bill of complaint, not including the territory in which the plaintiff operates"; that the patents referred to "are owned by B. W. Freeman who makes all contracts, and whose obligations under the said contracts are his own obligations".

It further alleges that it "is not a proper party to this litigation and should be dismissed therefrom". No reply or other pleading has been filed to the answer of the Louis G. Freeman Company.

In view of the findings and rulings hereinafter made, the court is of opinion that the defendant, the Louis G. Freeman Company, should be dismissed from this action with its costs. All references hereinafter made to the defendant will be made, and will apply, to defendant, Benjamin W. Freeman.

In his answer Benjamin W. Freeman admits certain allegations of the bill and denies others. Included with his answer are two counterclaims. As will presently appear, it is unnecessary to discuss the issues raised by the bill of complaint and the answer thereto and the first counterclaim and reply thereto, although reference to some allegations therein contained may be necessary in order to ascertain certain facts which are pertinent to the issue now before the court, particularly as all of the allegations of the first counterclaim are re-affirmed (but not re-written) in the second counterclaim.

In his second counterclaim defendant, Benjamin W. Freeman, alleges patent infringement upon the part of plaintiff herein of the patents involved in the license contract referred to by plaintiff in its bill of complaint. Defendant alleges that that contract has been rightfully cancelled and prays for an injunction restraining plaintiff "from directly or indirectly causing to be made, selling or causing to be sold, or using or causing to be used, or contributing to the use by others of any devices or products made in accordance with or embodying or employing the inventions of the said Re-issue letters patents Nos. 20,202, 20,-203, and 20,206, or any of them, or from infringement upon or violating the said letters patent or any of them in any way whatever."

Defendant prays also for an accounting from the date of the cancellation of the contract.

On August 25, 1937, plaintiff filed its reply to defendant's first and second counterclaims. In reply to the second counterclaim plaintiff plead the license contract, referred to in its bill of complaint. The second counterclaim on behalf of defendant and plaintiff's reply thereto raise the issue of the existence of a license agreement between the parties. Amended pleadings on other points have been tendered but, as yet, have not been filed because, on June 1, 1938, the parties hereto, by their respective counsel and with the approval of the court, entered into a certain stipulation. The original of this stipulation was filed in this court on June 1, 1938. It was made a

part of the record at the trial beginning November 17, 1938. Rec. p. 1. It reads as follows: "It is stipulated and agreed by and between counsel that the issue of the existence of a License Agreement between the parties shall be tried first and separately, under Equity Rule 29, 28 U.S.C.A. § 723 Appendix, and that the case proceed to trial without amendments to the pleadings at this time.

"It is further agreed that counsel for the defendants has been fully apprised of the subject matter sought to be pleaded and that said subject matter may be tendered as evidence subject to objection as to the competency of such matters at all, but not subject to any objection on the ground that defendant has not been apprised as to them or that plaintiff has not properly pleaded them.

"It is further understood that the court will not pass upon the filing of the pleadings submitted this morning at this time, but will defer its ruling with the agreement that if the court later holds that they may be filed, it may be done without prejudice to the rights of plaintiff or defendant and may be filed as of the date of this stipulation." Thus, as already indicated, the only issue at present before the court is that of the existence or non-existence of the license contract.

There appears to be some slight confusion in the minds of counsel as to just what documents now before the court raise this issue. In their brief (p. 2) counsel for defendant say "the present issue arises on the original bill and answer, the third counterclaim of the defendant, and the plea of license in the plaintiff's reply to this counterclaim." Also on page 3 of their brief counsel for defendant make reference to the "third counterclaim".

In their reply brief counsel for plaintiff (p. 1) say "We are unaware of any third counterclaim. Probably the second counterclaim is meant."

The record (pp. 10, 11, 12) shows that, at the trial, the following statements were made:

"The Court: I just wanted to check these over. I have the bill of complaint filed June 3, 1937, the answer of The Louis G. Freeman Company filed June 18, 1937, and the answer of B. W. Freeman, filed June 18, 1937.

"Mr. Allen: With three counterclaims.

"The Court: Does that contain the counterclaims?

"Mr. Allen: Two counterclaims, yes.

"The Court: And the plaintiff's reply to the first counterclaim, filed August 25, 1937.

"Mr. Allen: That is correct.

"The Court: The issue comes up, then, on the counterclaim and plaintiff's reply to the first counterclaim, is that it?

"Mr. Porter: Yes, Your Honor.

"The Court: All right. That is all the pleadings, then, I will have to consider at this time, just the first counterclaim and the reply thereto.

"Mr. Allen: Well, what it comes up on is, the only pleading it comes up on hasn't got anything to do with anything except the question of whether there is a license between the parties, and our first counterclaim involves a good many different things. Our second counterclaim is the patent infringement suit that we brought against these people because we contend they went on after the license was cancelled.

"The Court: Plaintiff's reply was filed on August 25, 1937, plaintiff's reply to the first counterclaim.

"Mr. Allen: In the reply to the second counterclaim is where he sets up license, in the reply to the second counterclaim.

"The Court: You have only two counterclaims?

"Mr. Porter: Yes, sir.

"The Court: I am trying to get down to what I have to consider. All I have to consider is the second counterclaim and the reply thereto.

"Mr. Allen: Yes, and the bill of complaint insofar as it sets up that the license was cancelled.

"The Court. This answer of Louis G. Freeman Company hasn't anything to do with this matter at this time.

"Mr. Allen: No."

The court agrees with counsel for plaintiff that defendant's counsel are evidently referring throughout to the second counterclaim (there appears to be no third counterclaim) and the court has so treated the pleadings in its consideration of the present issue.

From a consideration of all of the evidence and the applicable law, discussed by counsel in their briefs and arguments, the court has reached certain determinations which are set forth fully in its findings of fact and conclusions of law. It would

serve no useful purpose to here enter upon a lengthy recital of the facts nor to discuss the contentions of the respective parties as to the law. The facts as well as the views of the court as to the law are sufficiently disclosed in its findings and conclusions. They are as follows:

### Findings of Fact.

1. Plaintiff, Bee Machine Company, is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts.

2. Defendant, Benjamin W. Freeman, is a resident and citizen of Cincinnati, Ohio. Defendant, Louis G. Freeman Company, is a corporation duly organized and existing under the laws of the State of Ohio.

3. On November 29, 1933, defendant, Benjamin W. Freeman, in writing granted plaintiff, Bee Machine Company, a non-exclusive license to manufacture dies, anvils and masks for making cut-outs for fitted shoe uppers embodied in Freeman patent No. 1,681,033 (Ex. J-1), George Knight patent No. 1,886,554 (Ex. J-2), Thomas Reissue Patent No. 17,085 (Ex. J-4), all owned by the defendant Benjamin W. Freeman, and Joseph Knight patent No. 1,584,230 (Ex. J-3) under which Freeman had the right to grant licenses, limited however to the New England States and New York State, as embodied in the agreement (Ex. I).

4. The license agreement was prepared by Freeman's attorney and is a standard form of license granted by Freeman under his cut-out die patents. Plaintiff was represented by counsel in connection with the signing of the license agreement. It was prepared in June 1933 and not finally executed by plaintiff until Nov. 1933. Rec. pp. 286, 287.

5. Clause 10 of the license agreement (Ex. I) reads as follows: "10. This license may be canceled by the Licensor for cause or breach of condition by the Licensee upon first giving thirty (30) days written notice of the cause or breach complained of, and if not corrected within said time, a further written notice of cancellation may be sent by registered mail by Licensor cancelling this license within an additional thirty (30) days from said second notice, but such cancellation shall not affect the right of Licensor to collect royalties then due."

6. By a letter (Ex. AA) dated September 25, 1936, defendant notified Bee Machine Company that under clause 10 of the agreement there had been instances of breach of the agreement and that unless corrected within thirty days the license would be cancelled.

7. The running of time of thirty days following the first notice of cancellation referred to above (finding No. 6) was suspended by an arbitration agreement entered into between the parties, dated October 20, 1936 (Ex. M-8). Setting of the arbitration was had on November 12, 1936, which was attended by the parties and their counsel. Because of some alleged misunderstanding, at that time, regarding the relationship of the named arbitrator to the parties, the arbitration did not proceed and was cancelled. Rec. pp. 128 et seq., 194 et seq.

8. Plaintiff on Nov. 17, 1936, filed suit against defendant, B. W. Freeman in the Massachusetts state courts seeking to enjoin him from cancelling the license contract, and obtained a temporary order to that effect. Rec. pp. 196, 197. Ex. 21 identification. In May, 1937, this proceeding was dismissed, Rec. p. 200, for want of jurisdiction over the defendant, and thereupon by letter dated May 13, 1937, Ex.C.C., defendant B. W. Freeman, gave notice that the license contract would be terminated in thirty days from said date. Within said thirty days, to-wit, on June 3, 1937, the plaintiff filed the bill herein, in this court.

9. Defendant, B. W. Freeman, filed his answer to the bill of complaint, and certain counterclaims. The second counterclaim is a suit for injunction by defendant, B. W. Freeman, due to alleged infringement of the patents of said defendant since the cancellation of the contract. The patents in suit (on the counterclaim) are Reissue 20,-202 (Ex. K-1) and 20,203 (Ex. K-2) of Freeman, and Re. 20,206 (Ex. K-3) of George Knight, same (Ex. K-1 and K-2) being reissues of patent No. 1,681,033 and (Ex. K-3) 1,886,554, which had been listed in the license agreement. To this counterclaim plaintiff filed, among other things a plea of license under said reissue patents by virtue of the aforesaid license agreement. In a written stipulation (Rec. p. 1) signed by counsel for the respective parties hereto and filed herein on June 1, 1938, it was agreed that this issue of license be tried separately and prior to the other issues in the case. (The stipulation as here-

tofore set out in full is adopted by the court and made a part of these findings without repetition here).

10. The license contract between defendant and plaintiff was granted as part of a settlement of a patent suit brought by defendant B. W. Freeman, against plaintiff in the U. S. District Court in Boston, Mass., on his (Freeman's) patent No. 1,-681,033. Plaintiff satisfied the claim of the defendant for past infringement in said litigation, in addition to accepting the said license contract (Ex. I), whereupon the said patent suit was dismissed.

11. Difficulty between the parties as to the license began late in 1934, when reports for royalties and payment thereof were delayed so that defendant had to write and wire with regard to them (Exhibits 8, 9, 10, 11a, 11b). In March 1935 plaintiff submitted a report on dies sold, together with royalty check therefor, in which report an arbitrary amount had been deducted from the sales price of each die before calculating the royalty thereon (Ex. M-1 and M-2). There was no explanation made to defendant in connection with this report and it was accepted as genuine. Another such report containing an arbitrary deduction was rendered to defendant by plaintiff for June 1935, without explanation.

12. No reports were submitted after that until on September 14, 1935, when plaintiff submitted a revised report restating all previous reports and claiming an overpayment (Ex. M-2) with a letter (Ex. M-3). The letter purported to explain the report as being one which was to take care of dies sold but not paid for because of "bankruptcy, discounts or otherwise". Defendant replied with a letter (Ex. 14) dated September 27, 1935. In this letter defendant stated he did not understand "just what you are driving at" and insisted upon his regular royalties. He refused to permit any deduction.

13. For the months of July and August, 1935, plaintiff submitted apparently regular reports, paid the royalties and they were accepted. For the months of September and October, 1935, plaintiff submitted apparently regular royalty reports, paid the royalties and they were accepted. These reports, like the March and June reports, in reality stated as the sales prices on which royalty was calculated, sums 20% less than the true sales prices.

14. After October, 1935, no royalty reports were received by defendant, B. W.

Freeman, from plaintiff until February, 1936, when reports were submitted for November, and December, 1935, and January, 1936, but without royalty check. Said reports (Ex. M-4) contained a slip stating "The check is not included, as we are crediting the amount of it against past overpayments."

15. Thereupon defendant Freeman visited the factory of the plaintiff and later plaintiff sent in a report (Ex. M-5) for February, 1936, with further deduction and tendering a check for $54.15. This check was returned by defendant to plaintiff with a letter (original Ex. P. Copy in Ex. M-5) dated March 24, 1936.

16. What defendant found from his visit to plaintiff was that plaintiff was deducting from the sales price received by it for each die a sum of 20% before the royalty due under the contract was calculated and that this had been the basis for the revised report. Ex. M-2.

17. Thereafter plaintiff sent reports for March and April to defendant with check (Rec. pp. 189, 190) to cover. These reports (Ex. M-7) were fair on their face but defendant wired to inquire if they included the 20% deduction, and having received no reply retained the checks (marked Ex. 15 and 16 for identification. Rec. p. 190). Subsequently a report (Ex. M-7) for May, 1936, was sent to defendant with a check (Rec. p. 190, Ex. 17 for identification) which he also retained. The retained checks have not been cashed. Rec. p. 190; Exs. 15, 16, 17 for identification.

18. Thereafter no reports were submitted to defendant and on Sept. 25, 1936, the letter of cancellation (Ex. AA) hereinabove (finding No. 6) referred to was sent by defendant to plaintiff.

19. Plaintiff (by Mr. Burke, president and treasurer, Rec. pp. 31, 128 et seq., 194 et seq.) then came to Cincinnati, and at Cincinnati mailed reports for June, July, August and September, 1936, to defendant, on October 20, 1936 (Ex. 23), at which date the arbitration agreement (Ex. M-8) hereinabove (finding No. 7) referred to was entered into.

20. The contract contains no provision giving plaintiff the right to deduct 20% from sales prices of its dies before calculating royalty. This is the amount which it adds in making up the sales price of dies made under the Freeman contract over the price on dies not made under this contract.

21. Plaintiff has offered defendant, B. W. Freeman, as payment covering the accounts of June, July, August and September, 1936, a sum equal to 15% of $2.50 on all mask type dies sold by plaintiff, and nothing for anvil dies sold by plaintiff. This is not in accordance with the contract.

22. Plaintiff has made no accounts, at all since those submitted previous to the arbitration contract, and paid no money whatever to B. W. Freeman since June 1936.

23. Plaintiff did not make good the default called to its attention by the first notice of cancellation on September 25, 1936 (Ex. AA) prior to the receipt of the second notice of default on May 13, 1937. Ex. C.C.

24. In June 1936, plaintiff by virtue of reports from which deductions were taken, had paid or offered to pay to defendant 20% less than it was required to pay under the license contract. After June, 1936, plaintiff did not offer to pay anything whatever to defendant up to and including the date of the filing of the bill of complaint herein. Accordingly plaintiff was in default of royalties in September, 1936, when the first notice of cancellation was given. It was further in default in May, 1937, when the final notice was given.

25. Plaintiff has advanced no reason whereby it could be assumed that it (plaintiff) understood the contract in suit warranted the deduction of 20% before payment of royalties. There was no misunderstanding between the parties as to interpretation of the agreement. The failure to pay adequate royalties was purely arbitrary.

26. No other licensee of Freeman ever contended that he could deduct 20% before calculating royalties, from the sales prices of dies sold under similar licenses. A complete review of the invoices of three licensees having like contracts to that of the plaintiff, shows that no such deductions had been taken without the defendant's knowledge.

27. The license contract (Ex. I) was cancelled by defendant, Benjamin W. Freeman for cause or breach of condition justifying the cancellation upon his (Freeman's) part. (In their reply brief counsel for plaintiff say, pp. 1 and 2 "That Freeman attempted to cancel the contract is admitted. That the contract was cancelled for cause is denied. The principal question in the case is whether the plaintiff has given 'cause or breach of condition' justifying the attempted cancellation by Freeman.")

Conclusions of Law.

1. Plaintiff, Bee Machine Company, failed to pay the royalties due defendant Freeman, up to September 25, 1936, when the first notice of cancellation was sent by defendant. What it paid it paid on the basis of a claimed deduction which was unauthorized by the contract. For a period from May, 1936, to May, 1937, when the contract was finally cancelled it paid no royalties whatever to defendant. Defendant rightfully cancelled the contract as provided for therein, on account of these breaches.

2. Plaintiff was not excused from continuing to report and pay royalties under the contract following the first notice of cancellation thereunder.

3. There being an express provision for cancellation by defendant in the license contract, and the breach of plaintiff being without valid excuse, but instead being one which properly led defendant to understand that plaintiff had no intention of living up to his contract, the contract was properly cancelled by defendant.

4. The terms of the contract as to royalties are clear and distinct, and there was no misunderstanding between the parties as to the meaning of the contract, which in law might excuse failure to pay the royalties called for.

5. The failure of plaintiff to pay royalties on dies sold by him which were ultimately not paid for was an additional breach of the contract, and the plain terms thereof, which taken with the other breaches confirms the correctness of defendant's cancellation of the contract according to its terms.

6. The decision in Premier Mach. Co. v. Freeman, 1 Cir., 84 F.2d 425, came after breaches whereby defendant had the right to cancel the contract, and on account of which the cancellation was made, and hence it has no effect here on the propriety of the cancellation. This is particularly so since plaintiff made no offer whatever to pay any royalties whatever under the contract from the date of the decision until the date of trial of this cause.

7. The license contract in suit provides no warrant whatever according to

its terms for plaintiff to pay on mask type dies only a royalty on the mask plate alone, where the dies were sold as a unit with the mask plate attached. Whether or not plaintiff would have to pay royalty on a complete die if it sold a mask type die as an infringer, it cannot in law maintain its contract with Freeman and refuse to pay according to its terms.

8. The license contract (Ex. I) was cancelled by defendant, Benjamin W. Freeman for cause or breach of condition justifying the cancellation upon his (Freeman's) part.

9. Defendant, the Louis G. Freeman Company, should be dismissed with its costs. The prayer of defendant, Benjamin W. Freeman, as based upon the allegations contained in his second counterclaim is granted.

Decree accordingly.